IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 26, 2017

**STATE OF TENNESSEE v. CHRISTOPHER LYNN TAYLOR**

**Appeal from the Circuit Court for Anderson County**
**Nos. A9CR0675, B2C00176, & B2C00177          Donald R. Elledge, Judge**

_____

**No. E2016-01720-CCA-R3-CD**

_____

The Defendant, Christopher Lynn Taylor, appeals as of right from the trial court's order of total incarceration after his second violation of his six-year probationary sentence. The Defendant contends that the trial court erred in determining that he was a danger to society and by denying his request for drug treatment in the Community Corrections Program. Following our review, we discern no error. Thus, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

J. Thomas Marshall, District Public Defender; and Nancy C. Meyer, Assistant District Public Defender, for the Defendant, Christopher Lynn Taylor.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; David S. Clark, District Attorney General; and Emily F. Abbott, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On October 26, 2010, the Anderson County Grand Jury indicted the Defedant for one count of possession of a controlled substance in a penal facility in case number A9CR0675. See Tenn. Code Ann. § 39-16-201. On February 11, 2013, the Defendant was charged by information with driving while restricted as a habitual motor vehicle and burglary in cases numbers B2C00176 and B2C00177, respectively. See Tenn. Code Ann.

§§ 55-10-616, 39-14-402. The Defendant pled guilty and received a four-year sentence with all but seventy-five days suspended for the drug offense in case number A9CR0675. This sentence was to run consecutively with cases B2C00176 and B2C00177 and two others; however, the judgments in cases B2C00176 and B2C00177 are not included in the appellate record. It appears from the record that the Defendant was sentenced to a total of two years' probation for the habitual motor vehicle offender violation in case number B2C00176 and the burglary in case number B2C00177. It further appears that the Defendant's total effective sentence in all three cases was six years on probation.

On February 18, 2016, a violation of probation was issued regarding cases A9CR0675, B2C00176, and B2C00177. The warrant alleged that the Defendant was arrested for aggravated assault, domestic assault, aggravated robbery, evading arrest, and possession of drug paraphernalia. The warrant further alleged that the Defendant was discharged from in-patient treatment, was"referred back to IOP and failed to complete FSW recommendation as instructed"; that the Defendant had not reported to his probation officer since December 22, 2015; that the Defendant had tested positive for cocaine; that the Defendant still owed $2,669.50 in court costs; that the Defendant owed $150 in unpaid restitution; and that the Defendant had acted in a threatening manner toward the victim of the offenses for which he was arrested, "allegedly chok[ing] his victim, [strangling] her, and brandish[ing] a knife."

On June 13, 2016, the trial court held a hearing to consider these alleged violations. After reviewing the record, the trial court determined that this was the Defendant's second probation violation. At a revocation hearing, the following testimony was presented.

Andrew Curtis testified that he was a probation officer employed with the Tennessee Department of Correction. He was the Defendant's probation officer and had been supervising the Defendant since prior to the previous probation violation. When asked how he attempted "to try to get [the Defendant] on track" after the first violation, Mr. Curtis replied,

> After the first violation, [the Defendant had] served 364 days in Anderson County jail. We got him back on his feet and running again, but he was out early from that 364 because he needed out. And he was going to do some jail terms. So, he had several 30 day jail terms, so it was really hard to do anything in between that besides having to report and try to catch him at his house.

Mr. Curtis confirmed that by the fall of 2015, the Defendant had served all of his jail time. Mr. Curtis agreed that the first allegation in the warrant was that the Defendant had

picked up new charges in violation of Rules 1 and 14. He agreed that "Rule 1 is don't pick up new charges" and that Rule 14 states,

> I will not engage in any assaultive, abusive, threatening, or intimidating behavior, nor will I participate in any criminal street gang related activities as defined by Tennessee Code Annotated [section] 40-35-121, and I will not behave in a manner that poses a threat to others or myself.

Mr. Curtis confirmed that all but one of the new charges resulted "in convictions in General Sessions Court." Certified copies of the Defendant's convictions with the General Sessions Court for domestic assault, simple assault, and criminal trespassing were entered into evidence without objection.

Mr. Curtis testified that the Defendant also violated Rule 6 and explained that "Rule Number 6 is [the Defendant] agrees to allow his probation officer to visit his home and reports as directed and will follow any lawful instructions given by his officer." Mr. Curtis testifed that he instructed the Defendant to report and that the last time the Defendant reported was on December 22, 2015. Mr. Curtis explained that the Defendant was supposed to report on January 5, 2016, but he failed to do so. Mr. Curtis agreed that in February 2016, the Defendant "pick[ed] up those new charges." Mr. Curtis said that between January 5, 2016, and the time the Defendant acquired new charges, he had not been able to schedule an appointment with the Defendant. Mr. Curtis explained that he "attempted to do a home visit, but [he] ended up leaving a door hanger. [The Defendant] did call [him] back after that and said that he was living there, but [Mr. Curtis] was unable to get [the Defendant] back to the office."

Mr. Curtis testified that the Defendant still owed $2,669.50 in court costs and $150 in restitution. He stated that the Defendant had not made any payments on restitution.

Mr. Curtis also testified about substance abuse treatment the Defendant had received. He explained that the "[f]irst time [the Defendant] completed treatment was April 30, 2013." Mr. Curtis testified that he referred the Defendant for treatment a second time, but the Defendant was discharged on November 6, 2015, after his treatment was "unsuccessful." Mr. Curtis testified that after his December 22, 2015 meeting with the Defendant, he sent him "to Ridgeview to complete treatment" for a third time. He explained that he "tried to give [the Defendant] the benefit of the doubt" when he was discharged from treatment in November 2015. However, Mr. Curtis testified that the Defendant did not complete the new treatment because he was arrested on new charges.

Glenda Langenburg testified that she knew the Defendant because she owned a landscaping business in Oak Ridge from 1989 to 1996 and that the Defendant was

employed by her. Ms. Langenburg explained that the Defendant "still works for [her] and several of the neighbors who live[d] in the neighorhood." She said that he did landscaping and was a good worker. When asked if she would have any hesitation hiring him if he was released from jail, she replied, "No." Ms. Langenburg also testified that the Defendant "ha[d] a dependency problem" and that "he need[ed] help with it." She elaborated that "[s]ometimes he is a very hard worker. I don't think he's a threat, you know, to anyone. I don't think he's going to harm anyone, or I have never seen that part of him for all the years that I've known him."

The Defendant testified and agreed that he "was asking the [c]ourt to give [him] another chance and put [him] on [c]ommunity [c]orrections[.]" He confirmed that he was aware that if he violated the terms of the Community Corrections Program, "[his] sentence [could] be extended for three years" and he was "willing to take that risk[.]" Counsel for the defense showed him a document, and the Defendant acknowledged that the document was a letter "confirming that [he] had a bed" at "STEPPS House[.]" The letter was entered into evidence. When asked if he knew anything about the STEPPS program, the Defendant said,

> Well, since I've been incarcerated, I've been looking into it. I'm thinking that . . . it's a six month to a year [long] program. And you start on, like, the maximum level, and you work yourself down through a drug program. Basically it's something like Drug Court, but you actually live and stay there at the halfway house while you do it.

The Defendant agreed that he was "not eligible for Drug Court because of [his] new conviction." He stated that this conviction was "the only assault conviction" that he had ever had.

The Defendant testified that he had been in jail since February 2015 and that he was "willing to accept a split sentence" "[t]o serve a year and then be released to [c]ommunity [c]orrections[.]" When asked if he had made an effort to enter any substance abuse programs while at the jail, he responded,

> I've done the Accepting Change, the Life Recovery, and there's a Bible study group that comes. It used to be Going for Goal, and then they changed it to Purpose Driven Life. And now they've changed it to something else, and I'm really not for sure what the name of it is. But I've done the Purpose Driven Life the whole time I've been there basically[.]

The Defendant also confirmed that he was enrolled in GED classes through Clinch Valley Adult Education. He testified that he has a total of six children and that he pays

child support for three of those children. The Defendant was asked, "[W]hat do you think would happen if you were on [c]ommunity [c]orrections, and you served some time and then went to the STEPPS House and then you were made to leave the STEPPS House?" He replied, "I would probably go back to my mom's. As long as I didn't get violated or nothing or no new charges or nothing like that[.]"

On cross-examination, the Defendant said that he "had a bad drug problem." He testified that he was "getting hooked on them again" and that he "need[ed] help." The Defendant said that he did not report to Mr. Curtis on January 5, 2016, because he did not have transportation. He testified that he did not report again because he "caught these new charges and ended up in jail." He agreed that he was incarcerated for "domestic assault charges" and that he pled guilty to those charges. When asked if he acknowledged that he violated rules of his probation by "pick[ing] up new charges or convictions" and "behav[ing] in a violent manner," the Defendant replied, "Yes[.]" However, he qualified this affirmation with the following statement:

> I wouldn't say that I failed them. I got into an argument with a girl that is well-known for calling the police and everything, and she called the police. And I did grab her. I grabbed her by her sides. I did do that. I admitted to that. I told the police that I done it. That's the reason why I took the charge for the domestic assault. I pled down to it. I was aggravated. We were standing there arguing. She was all in my face arguing with me, and I did grab her. And then I guess they called the police and said that I aggravated, assaulted her, and some more stuff. She actually came to court to testify to say that I did not aggravate or assault her[.]

Counsel for the State asked, "You pled guilty to those charges [of domestic assault], correct[?]" The Defendant responded, "Yes. I pled guilty to them. I had them amended down to a misdemeanor and pled guilty to them, yes, I did."

At the conclusion of the revocation hearing, the trial court found that the Defendant had violated multiple rules of his probation by failing to report, obtaining new convictions, being discharged from inpatient treatment, failing to pay court costs, and failing to pay restitution. The trial court also found that the Defendant had a drug dependency problem. The trial court concluded that the Defendant was a threat to society and denied his request to be place on community corrections. The trial court revoked the Defendant's probation and ordered him to serve the remainder of his six-year sentence, with credit for time served.

ANALYSIS

On appeal, the Defendant argues that the trial court erred in finding that the Defendant was a threat to society "based on two misdemeanor assault convictions" and in denying the Defendant an opportunity to serve his sentence in the Community Corrections Program and receive drug treatment. The Defendant does not dispute that he violated the terms of his probation. The State responds that the trial court properly exercised its discretion in denying the Defendant a community corrections sentence after his second probation violation. We agree with the State.

In its reasoning revoking the Defendant's probation and denying a community corrections sentence, the trial court reasoned as follows:

> [Defendant], you have committed violent acts that you've pled guilty to even in reduction. You have had the opportunity on at least two occasions to have treatment for your problems with drugs and alcohol. Those two occasions occurring at least two months, three months before [the] violation of probation was filed. Your violation of probation wasn't even filed until after those domestic assaults and you were placed in jail. It was only there, and the [c]ourt so finds, that the probation officer even knew where you were as he testified to because you didn't report anymore after that as he testified to, and I so find.
>
> There's no question in the [c]ourt's mind that he is in violation of his probation. Also, I find based upon the crimes that he has committed, the assault crimes, the [c]ourt finds that he's a threat to society.
>
> In reviewing your entire files and what you've been charged with, what you've pled to – and I'm just placing emphasis on what you've pled to over the years and the chances that you've gotten, I don't see [c]ommunity [c]orrections as an opportunity for you, especially with these assault convictions.

This court has repeatedly held that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002). The trial court did not err by concluding that the Defendant's drug issues would best be treated in a correctional facility rather than in the community. It was within the trial court's authority to order the Defendant to serve the remainder of his sentence in confinement upon revoking the Defendant's probation with credit for time served. See Tenn. Code Ann. §§ 40-35-310,-

-6-

311(e); <u>State v. Mitchell</u>, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).  Accordingly, the Defendant has failed to establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded to the trial court's denial of alternative sentencing.

CONCLUSION

Based upon consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____

D. KELLY THOMAS, JR., JUDGE